UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 09-69-JBC**

**MARY MURPHY,**                                                                  **PLAINTIFF,**

**V.**               **MEMORANDUM ORDER AND OPINION**

**THE ALLEN COMPANY, INC., ET AL.,**                               **DEFENDANT.**

\* \* \* \* \* \* \* \* \*

This matter is before the court on The Allen Company's motion for summary judgment (R. 159). Because Mary Murphy cannot establish a prima facie case of sex discrimination, and because she cannot sufficiently prove that The Allen Company's decision to terminate her employment was retaliatory, the court will grant the motion.

This case originates with an alleged misclassification of Murphy by her previous employer and the Kentucky Association of Highway Contractors ("KAHC"). KAHC provides an On-the-Job Training Program to provide women and minority men with skills and experience necessary to find jobs in the construction industry. The Training Program trains workers to perform specific trades, including Class-B Heavy Equipment Operators, who are trained to operate simpler heavy equipment, and Class-A Heavy Equipment Operators, who are trained to operate more complex equipment. Employers who hire trainees through the program are allowed to pay those workers a reduced wage to reflect their in-training status. Trainees who complete a requisite amount of on-the-job training are certified as

journeymen in that field and are entitled to full wages.  Contractors must participate in the KAHC Training Program or similar programs to comply with federal and state procurement requirements.

Through the KAHC Training Program, Murphy obtained non-union employment in April 1999 with Hinkle Construction, where she was assigned to operate a sheepfoot compactor as a trainee Class-B Heavy Equipment Operator.  A sheepfoot compactor without a blade, or with a non-engaged blade, is classified by the KAHC Training Program as Class-B equipment; a unit with an engaged blade is Class-A equipment.  The sheepfoot compactor to which Murphy was assigned had a blade, and she at times operated it with the blade engaged.  After completing 1,400 hours operating the sheepfoot compactor, Murphy was certified by Hinkle and KAHC as a journeyman Class-B Heavy Equipment Operator.  Murphy was laid off from Hinkle in 2004, and she joined the International Union of Operating Engineers Local 181 in February 2004 in order to obtain further work.

Local 181 was a party to a collective bargaining agreement with a consortium of highway construction companies, including The Allen Company.  In April 2004, The Allen Company requested from Local 181 a trainee to satisfy its contract for work on Kentucky Route 52.  Local 181 referred Murphy to Lee Gallion, The Allen Company's project superintendent.  Though Local 181 did not inform Murphy that she would be a Class-A trainee before her referral, she learned about her trainee status, and corresponding 60% wages, no later than May 14, 2004, three days before she began work for The Allen Company.  When Murphy

began work, she met with the foreman, Terry Helton, who informed her that she would be a trainee Class-A Heavy Equipment Operator operating a sheepfoot compactor with a blade.  Murphy argued that she should not be a trainee because she had already been certified as a Class-A operator.  Helton informed Gallion of Murphy's concerns, and Gallion then confirmed Murphy's trainee status and 60% trainee pay rate with Local 181 and The Allen Company's human resources department. He then informed Helton who informed Murphy that she was correctly classified.

Murphy discussed the issue of her classification with a representative of the Kentucky Department of Transportation in June 2004, and was later informed that her hourly rate was correct.  In July 2004, Hugh Gabbard, President of The Allen Company, received confirmation from the Director of the Division of Contact Procurement that Murphy had been correctly hired and approved as a Class-A trainee.  This confirmation, however, provided that because Murphy already had experience with the sheepfoot compactor, she should be allowed to operate other equipment, when available.  As there was no other Class-A equipment available, The Allen Company began permitting Murphy to operate Class-B equipment at a full journeyman wage.

Murphy continued to follow up with the Transportation Cabinet regarding her contention that she had been misclassified for her work at Hinkle.  In November 2004, Murphy received a letter from the Division of Contract Procurement

confirming her past and present training status as a Class-B journeyman and Class-A trainee.

In August 2007, Murphy was operating a sheepfoot compactor for The Allen Company on a job in Berea, Kentucky, supervised by Tom Debord.  On August 17, Murphy met with two Transportation Cabinet representatives regarding her alleged misclassification and its effects on her wages from The Allen Company.  At lunch, a co-worker asked Murphy about the interview, and Murphy described it in response.  Debord, who was eating nearby, asked Murphy whether she would give up her wage claim, to which Murphy responded that she would not.  Later that afternoon, Debord informed Murphy that she was being laid off because there was no longer a need at the Berea site for a full-time operator of a sheepfoot compactor.  In the days following her layoff, Murphy visited the Berea site and viewed other male employees operating the sheepfoot compactor.  Murphy was not recalled to work by The Allen Company, and was eventually referred to another contractor by Local 181.

Murphy filed a complaint in state court asserting counts against The Allen Company for sex discrimination and retaliation, and The Allen Company removed to this court on the basis of pre-emption under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  The Allen Company has moved for summary judgment on all counts.

As an initial matter, the court must address the issue of Murphy's status under the KAHC Training Program. Murphy asserts in her response that she

"received certification on Class B construction equipment, as well as Class A construction equipment," and that she "received certification on the Class 'A' 'sheepfoot' compactor," but that "Hinkle only classified the Plaintiff as a Class 'B' journeyman." R. 162 at 3. The KAHC Training Program, however, does not certify workers as operators of specific equipment, but rather as those trained to perform certain jobs: carpenters, truck drivers, structural ironworkers, engineering aides, etc. *See* Kentucky Association of Highway Contractors On-The-Job Training Program, R. 159-7 at 29-34, R. 159-8 at 1-12. "Class-A Heavy Equipment Operators" and "Class-B Heavy Equipment Operators" have different functions, training procedures, minimum hour requirements for certification, and multiple pieces of equipment they are authorized to operate. By the terms of the KAHC Training Program, Murphy cannot have received journeyman certification specifically on the sheepfoot compactor; rather, she received journeyman certification as a Class-B Heavy Equipment Operator for her hours worked while employed by Hinkle operating a sheepfoot compactor. *See* Ky. Dept. of Transportation Trainee Graduation or Termination Form, Jul. 8, 2001, R. 159-10 at 18; KAHC Class B Operator Certification, Mar. 13, 2002, R. 159-11 at 14. Murphy's assertions in her response that imply she was indeed certified by KAHC as a journeyman Class-A heavy equipment operator are contradicted by the evidence; this is not a genuinely disputed material fact because a jury could not reasonably find for Murphy on this point. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249-249 (1986). Thus, the court interprets Murphy's statements to assert

that though she worked a sufficient number of hours on Class-A equipment (a sheepfoot compactor with engaged blade) to be certified as a journeyman Class-A heavy equipment operator, she was officially certified by KAHC as a journeyman Class-B equipment operator. Whether Murphy was in fact misclassified by Hinkle or KAHC is an issue entirely separate from this case, because such classification occurred before Murphy's employment by The Allen Company, the sole defendant in this action.

In Count I of her complaint, Murphy alleges that The Allen Company discriminated against her on the basis of her sex in her job assignments, wages paid, and work breaks in violation of the Kentucky Civil Rights Act ("KCRA"), KY. REV. STAT. § 344.010 *et seq*. Specifically, she argues that her initial pay classification as a trainee Class-A heavy equipment operator at 60% wages was motivated by sex discrimination. Because Murphy cannot establish a prima facie case of discrimination, The Allen Company is entitled to summary judgment in its favor on this issue.

First, the court will grant summary judgment to The Allen Company on Murphy's claims of discrimination in her job assignment and work breaks. In its motion, The Allen Company asserted facts that challenge Murphy's allegations on these aspects of her claim, and Murphy in her response did not dispute these facts or otherwise argue her case on these points. Because Murphy did not address or counter The Allen Company's assertion of those facts, The Allen Company's recitation of the relevant facts is undisputed for purposes of its motion. The Allen

Company is entitled to summary judgment on those aspects of Murphy's discrimination claim pursuant to Fed. R. Civ. P. 56(e).

Second, The Allen Company is entitled to summary judgment on Murphy's claim of sex discrimination in wages during the time she was paid as a Class-A trainee because she cannot establish a prima facie case of discrimination. Murphy brought her claims under the KCRA, which has been interpreted consistently with Title VII of the Civil Rights Act of 1964. *See, e.g., Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *see also* KY. REV. STAT. § 344.020(1)(a). To prove sex discrimination under the KCRA, Murphy must present either direct evidence of intentional discrimination or circumstantial evidence that creates an inference of intentional discrimination. *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995). Murphy does not present direct evidence of discriminatory intent, but only evidence that could possibly give rise to an inference of such intent, and therefore Murphy's claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-803 (1973).

Under *McDonnell Douglas*, Murphy must first establish a prima facie case of sex discrimination for her receipt of lesser wages, but she cannot do so under the facts she has asserted. In order to establish her prima facie case, Murphy must show that she was a member of a protected group, that she was subjected to an adverse employment action, that she was qualified for the position, and that similarly situated non-protected employees were treated more favorably. *See Murray v. Eastern Ky. Univ.*, 328 S.W.3d 679, 682 (Ky. App. 2009) (citing *Peltier*

7

*v. U.S.*, 338 F.3d 984, 987 (6th Cir. 2004)).  Murphy cannot show that she suffered an adverse employment action or that similarly situated non-protected employees were treated more favorably.  An adverse employment action is a "materially adverse change in the terms or conditions of employment because of the employer's actions" that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593-594 (6th Cir. 2007).   There was no materially adverse change in the terms or conditions of Murphy's employment because when she was hired by The Allen Company under the KAHC Training Program, it was with the understanding that she would be paid a trainee Class-A heavy equipment operator's 60% wages.  Though Murphy asserts that she was qualified for Class-A journeyman status as an operator on the sheepfoot compactor, she was not at that time certified by KAHC as a Class-A journeyman, and The Allen Company was under no obligation to independently promote her to Class-A journeyman status regardless of her level of experience.  Its not doing so cannot be considered an adverse employment action, as it merely maintained the status quo.  Also, Murphy has not argued that The Allen Company's later reclassification of her as a journeyman Class-B heavy equipment operator was an adverse employment action.  While she was classified as a trainee Class-A heavy equipment operator, Murphy was paid in accordance with the terms and conditions of her employment, and thus with regard to her wages suffered no adverse employment action at the hands of The Allen Company.

Likewise, Murphy cannot establish that similarly situated non-protected employees were treated more favorably. To do so, Murphy must show that proffered similarly situated employees are similar in all relevant aspects other than being members of the protected class. *See Murray* at 682 (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)). This would require Murphy to show that there were males, hired through the KAHC Training Program, who were promoted by The Allen Company to Class-A heavy equipment operator journeyman status and pay because of their experience despite their lack of official Class-A journeyman certification. Murphy has not provided any proof of this nature; the male comparators she has offered were not trainees and did not operate the same equipment as Murphy. As Murphy cannot establish two of the four elements of a prima facie case of sex discrimination under the KCRA, it is unnecessary to proceed through the remainder of the *McDonnell Douglas* framework.

Third, at this stage of the litigation, Murphy cannot base her arguments for sex discrimination on her termination by The Allen Company. In Murphy's response to The Allen Company's motion for summary judgment, she has asserted for the first time that her termination in August 2007 was not only an act taken in retaliation for her complaints, but that the termination was itself motivated by sex discrimination. Murphy did not assert in her complaint that she was terminated because she was a woman, but only in retaliation for her complaints. Murphy has not amended her complaint since filing it in state court. Murphy's argument that

her termination was itself motivated by sex discrimination is therefore a new claim that is not properly before the court, *see Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005), and will not be considered.

Finally, Murphy cannot establish her discrimination case under a mixed-motive theory. In order to succeed on a mixed-motive discrimination claim, Murphy must show that The Allen Company took an adverse employment action against her and that her sex was a motivating factor for the adverse employment action. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 390-391 (6th Cir. 2010). As discussed above, Murphy cannot show that she suffered an adverse employment action that is properly before the court, and thus cannot meet this initial threshold for establishing a mixed-motive discrimination claim.

Because Murphy cannot establish a prima facie case of discrimination under the KCRA, and because she cannot otherwise establish that sex discrimination was a partial motive for an adverse employment action taken against her, no genuine dispute of material fact exists as to Murphy's sex discrimination claim, and The Allen Company is entitled to summary judgment on Count I pursuant to Fed. R. Civ. P. 56(a).

In Count II of her complaint, Murphy alleges that she was terminated and not recalled to work in violation of the KCRA and union policies in retaliation for her attempts to address her allegations of discrimination with representatives of the Kentucky Transportation Cabinet and The Allen Company. Portions of Murphy's

retaliation claim must be dismissed as pre-empted by the LMRA. The Allen Company is entitled to summary judgment on the remainder of the claim because Murphy cannot sufficiently prove that The Allen Company's stated justification for her termination is merely pretext.

The portions of Murphy's retaliation claim that involve union policies and practices must be dismissed because they are pre-empted by § 301 of the LMRA. In its order on Murphy's motion to remand, this court determined that the allegations in paragraphs 28 and 29 of Count II of Murphy's complaint require the court to interpret the applicable collective bargaining agreement, and are thus pre-empted by the LMRA. *See* R. 12 at 4-5. Despite this ruling, Murphy has chosen to argue these aspects of her claim solely under the KCRA, and the court will accordingly dismiss them pursuant to Fed. R. Civ. P. 12(b)(6) as Murphy fails to state a claim upon which relief can be granted. This dismissal of portions of Murphy's complaint, however, does not entirely eliminate her retaliation claim, but merely those portions of it that would require interpretation of the collective bargaining agreement: her claim that continued use on-site of the sheepfoot compactor after her termination was a violation of union policies, and her failure-to-recall claim based on union rules regarding seniority. Murphy's evidence regarding other operators' use of the sheepfoot compactor after her termination is, however, still relevant to her retaliation claim.

Nonetheless, The Allen Company is entitled to summary judgment on the remaining portions of Murphy's retaliation claim because Murphy cannot show that

The Allen Company's proffered legitimate, non-discriminatory reason for her termination is pretextual.  Murphy can establish a prima facie case of retaliation under the KCRA, *see Ky. Dept. of Corrections v. McCollough*, 123 S.W.3d 130, 133-34 (Ky. 2004): she was engaged in the protected activity of complaining about being misclassified as a trainee and being paid lesser wages due to alleged discrimination, *see* KY. REV. STAT. § 344.280(1); she was disadvantaged when she was terminated by The Allen Company; and she has provided evidence sufficient to allow an inference of causal connection between her complaints and her termination, due to the temporal proximity between the two. *See McCollough* at 135.

Because Murphy can establish a prima facie case of retaliation, the burden shifts to The Allen Company to provide a legitimate, non-discriminatory reason for Murphy's termination. *See McCollough* at 134 (employing the *McDonnell Douglas* framework for retaliation claims under the KCRA).  The Allen Company asserts that Murphy was terminated because "regular use of a compactor was needed less and less each day, and thus did not require a full-time journeyman operator," R 159-1 at 14, and that such layoffs as available work on a project lessened were common practice in the industry. *See* Deposition of Lee Gallion, Aug. 24, 2011, R. 159-12 at 7; Deposition of Pearl DeBord, Oct. 18, 2011, R. 159-15 at 3-4; Deposition of Terry Helton, Aug. 24, 2011, R. 159-14 at 3.  As Murphy was the full-time operator of the sheepfoot compactor, she was laid off when need for the equipment lessened.

Murphy cannot show by a preponderance of the evidence that The Allen Company's alleged reason for her termination is not its true reason, but merely a pretext for retaliation. *See McCollough* at 134. Murphy's evidence that the proffered reason is pretextual consists of the facts that she was the only employee terminated that day, and that she observed other employees operating the sheepfoot compactor in the week after she was terminated. *See* Deposition of Mary Murphy, July 25, 2011, R. 159-2 at 32, R. 159-3 at 10. The Allen Company concedes that other employees may have operated the sheepfoot compactor after Murphy's termination, but maintains that at the time of her termination, there was insufficient need for that equipment to support a single full-time operator. *See* R. 159-1 at 32; R. 163 at 5. Murphy's evidence is insufficient to establish a genuine dispute of material fact as to whether the The Allen Company's stated justification has no basis in fact, *see Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 497 (Ky. 2005), because in order to show the proffered reason to be false, she must provide some evidence that there was indeed a continuing need for a full-time operator on the sheepfoot compactor. Murphy's observations of multiple persons operating the sheepfoot compactor after her termination, without evidence that those persons had been hired as full-time operators of the sheepfoot compactor, is insufficient to demonstrate this. Nor does Murphy's evidence demonstrate that the proffered reason did not actually motivate the decision to terminate her, or that the proffered reason was insufficient to motivate the decision. *Id*. (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994)). As Murphy

13

therefore cannot prove that she was terminated in retaliation for her complaints, there remains no genuine dispute of material fact on Murphy's retaliation claim, *See McCollough* at 134, and The Allen Company is entitled to summary judgment on Count II.

Accordingly,

**IT IS ORDERED** that The Allen Company's motion for summary judgment (R. 159) is **GRANTED**.

A separate judgment will issue.


Signed on May 23, 2012

Jennifer B. Coffman
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY